IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYUNG KEE HWANG and LINDA HWANG, | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 14-1896 |
| CAFÉ DEVELOPMENT GROUP NYC, LLC, | |
| Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                           **JULY 17, 2014**

Presently before this Court is Defendant, Café Development Group NYC, LLC's ("Defendant"), "Petition to Open Confessed Judgment," Plaintiffs, Myung Kee Hwang and Linda Hwang's ("Plaintiffs"), Response, Defendant's Reply, and Plaintiffs' Sur-Reply. For the following reasons, Defendant's Petition is granted.

**I.   BACKGROUND**

Plaintiffs filed a "Complaint in Confession of Judgment" against Defendant on March 31, 2014. (Doc. No. 1.) The Clerk of Court entered the confessed judgment on this same date. Plaintiffs, husband and wife, are individuals with their residence in Moorestown, New Jersey. Compl. ¶ 1. Defendant is a "Pennsylvania Limited Liability Company" located in Philadelphia, Pennsylvania. Id. ¶ 2.

Plaintiffs assert that on August 24, 2011, they agreed to lend $297,500 to Defendant. Id. ¶ 5. The agreement was memorialized on this date in a Promissory Note (the "Note"), and sets

out the terms of repayment as well as other obligations.[1]  (Pls.' Resp., Ex. A.)  Plaintiffs aver that Defendant violated several of the obligations imposed on it under the Note.  Compl. ¶ 8.  Plaintiffs demand an amount of $221,199.93, excluding attorneys' fees and costs.  Id. ¶ 16.

Defendant filed the instant Petition to Open Confessed Judgment ("Petition") on April 18, 2014.  (Doc. No. 2.)  Plaintiffs filed a Response on May 2, 2014.  (Doc. No. 4.)  Defendant filed a Reply, and Plaintiffs filed a Sur-Reply.  (Doc. Nos. 5, 11.)

## II.   STANDARD OF REVIEW

Motions to open a confessed judgment are procedurally governed by Rule 60 of the Federal Rules of Civil Procedure.  FDIC v. Deglau, 207 F.3d 153, 161 (3d Cir. 2000).  Pursuant to Rule 60(b), when determining whether to open a judgment by confession, the proper inquiry involves consideration of whether the "judgment will visit prejudice on the plaintiff, whether the defendant has a meritorious defense, and whether the default was the result of the defendant's culpable conduct."  Id. at 166; see also Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d 284, 288 (3d Cir. 1994); General Elec. Capital Corp. v. Stone, No. 04-1691, 2005 WL 300066, at *2 (E.D. Pa. Feb. 4, 2005); Sovereign Bank v. Catterton, No. 03-4954, 2003 WL 23162405, at *5 (E.D. Pa. Dec. 3, 2003).  However, the motion must provide "'clear, direct, precise' and

---

[1] The Note contains a "warrant of attorney" ("Warrant") which states in part that:

> [w]hereby and upon the occurrence of an event of default under the Promissory Note the Defendant authorized and empowered any attorney of any court of record to appear on its behalf to confess judgment against Defendant without prior notice to Defendant or prior opportunity to be heard for all sums due under the Promissory Note, together with costs of suit, including reasonable attorneys' fees.

Id., Ex. A ¶ 12.

'believable' evidence'" of such defenses. Deglau, 207 F.3d at 168 (quoting Suburban Mechanical Contractors, Inc. v. Leo, 502 A.2d 230, 232 (Pa. Super. 1985)).

These proceedings "involve equitable principles, and only those judgments which warrant equitable interference will be opened." Manor Bldg. Corp. v. Manor Complex Association, Ltd., 645 A.2d 843, 251 n.2 (Pa. Super. 1994). Thus, unlike with motions to strike, we can consider matters outside the complaint and the documents involving the judgment by confession clauses. Id. (citing Keystone Bank v. Flooring Spec., Inc., 518 A.2d 1179, 1182 n.4 (Pa. 1986)).

The Court of Appeals for the Third Circuit has held that "a judgment against a reasonably sophisticated, corporate debtor who has signed an instrument containing a document permitting judgment by confession as part of a commercial transaction is enforceable in the same manner as any other judgment." FDIC, 207 F.3d at 161 (citing Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1272 (3d Cir. 1994)) (drawing a distinction between parties to commercial transactions and individuals who unwittingly sign disadvantageous consumer contracts).

A motion to open is to be granted "[i]f evidence is produced which in a jury trial would require the issues to be submitted to the jury." Pa. R. Civ.P. 2959(e). Thus, the standard of sufficiency is that of a directed verdict. See Suburban Mechanical Contractors, Inc., 502 A.2d at 232. The district court is to view all the evidence in the light most favorable to the petitioner and to accept as true all evidence and proper inferences from it which support the defense while rejecting adverse allegations of the party obtaining the judgment. Id.

**III.  DISCUSSION**

In their Complaint to Confess Judgment, Plaintiffs aver that Defendant violated the

following terms of the Note: (1) failing to provide "annually on or before April 30 of each year for the year then ended" a financial statement and income tax return for Todd Carmichael ("Carmichael"), Jean-Philippe Iberti ("Iberti") and Tobin Bickley ("Bickley"),[2] as well as Café NYC itself, pursuant to Section 6(a)[3] of the Note; (2) failing to provide copies of these named individuals' federal income tax returns on or before April 30 of each year pursuant to Section 6(a) of the Note; (3) failing to "maintain complete and accurate books and records and, upon reasonable advance notice, [to] permit access by Lender during business hours to such books and records" pursuant to Section 6(h)[4] of the Note; and (4) failing to allow Plaintiffs to "audit and conduct examinations of the books and records and accounts receivable of Borrower" pursuant to Section 6(h) of the Note. Compl. ¶¶ 8-11.

---

[2]Bickley is the Chief Operation's Officer of Café NYC.

[3]This Section states that the "Borrower will deliver to the Lender":

> i. A personal financial statement and copy of federal income tax return for Todd Carmichael, Jean-Philippe Iberti and Tobin Bickley (each, a "Guarantor"), annually on or before April 30 of each year for the year then ended; and
>
> ii. An annual financial statement for the Borrower, annually on or before April 30 of each year.

(Pls.' Resp., Ex. A ¶ 6(a).)

[4]This Section states in relevant part:

> The Borrower will maintain complete and accurate books and records and, upon reasonable advance notice, will permit access by Lender during business hours to such books and records . . . Lender may at any time and from time to time, on reasonable notice to Borrower (or, if an Event of Default has occurred and is continuing, without prior notice), audit and conduct examinations of the books and records and accounts receivable of Borrower.

(Id. ¶ 6(h).)

In its Petition, Defendant asserts that, at the time the judgment was confessed on March 31, 2014, Plaintiffs were in possession of federal tax returns for the years 2011 and 2012 for Bickley, Iberti, and Carmichael, and June 2013 personal financial statements for these individuals. (Def.'s Mot. Open, Ex. A, Bickley Decl. ¶ 2.) Bickley states in his Declaration that Defendant complied with the requirements of the Note by providing those financial documents to Plaintiffs by email on December 10, 2013. (Id.) Defendant also asserts that pursuant to Section 6(a)(i) of the Note, the personal financial statements for the year ended in 2013 were not yet due as of the filing of Plaintiffs' Motion on April 18, 2014. (Def.'s Mot. Open at 6.) Defendant contends that Plaintiffs "abused the warrant of attorney in the Note to confess Judgment" because they were in possession of these financial documents at the time they confessed judgment and, despite the fact that "Plaintiffs [knew] Defendant has valid defenses to the entry of judgment." (Id. at 2-3.)

Defendant further states that Plaintiffs and Café NYC and companies related to Café NYC recently have been "discussing terminating all business arrangements between Café NYC and Plaintiff[s], including the possibility of a voluntary prepayment of the full amount of the Note. The parties, however, have not reached an agreement on the severance." (Id. at 3.) Defendant claims that, rather than resolving the business issues relative to its voluntary prepayment of the Note, Plaintiffs filed the instant confession of judgment in bad faith in order to gain leverage against it in the negotiations of the severance. (Id.) Defendant adds that it has been making monthly payments under the Note since September 2011, and there is no allegation that it has defaulted on any monetary payment. (Id.)

Defendant also asserts that on January 30, 2014, prior to confessing judgment, counsel for

Plaintiffs, on a number of occasions, identified the documents which were allegedly owed to it and allegedly have not been produced, and that such requested documents did not include any personal financial statements or returns for Bickley, Iberti and Carmichael. (Id. at 6.) Defendant contends that, despite the fact that Plaintiffs did not request any personal financial statements and did not indicate that any personal statements were missing, they still confessed judgment in bad faith on March 31, 2014, based on allegations that Defendant failed to provide personal financial statements. (Id. at 7.)

Plaintiffs respond that Defendant, by its own admission, did not produce the 2011 and 2012 tax returns of Carmichael, Iberti, and Bickley until December 30, 2013, more than a year and a half after they were due, which under the Note was "on or before April 30 of each year for the year then ended." (Pls.' Resp. at 4.) Plaintiffs state, that contrary to Defendant's assertions, Defendant had not voluntarily complied with its obligations under the Note, but instead, "engaged in a pattern of action to hide and delay the provision of the required information to put Plaintiffs to as much expense as possible in obtaining such information." (Id.) Plaintiffs argue that just because Defendant provided the information long after it was due, does not excuse the fact that Defendant was in default of the requirements of the Note. (Id.) Plaintiffs add that they have been more than patient with Defendant since they did not declare a default immediately on May 1, 2012, when Defendant missed the first reporting deadline, but rather on November 13, 2013,[5] many months after Defendant's actual default. (Id. at 4-5.)

---

[5]On this date, Plaintiffs' counsel wrote to Defendant stating that they had previously, by letter dated October 15, 2013, requested certain financial documents by November 5, 2013, and that because they had not received these documents, Defendant was in default. (Id., Ex. B.) Plaintiffs demanded immediate full payment of the outstanding balance of the Note. (Id.) Plaintiffs also demanded: (1) a personal financial statement and federal tax returns for Carmichael, Oberti, and Bickley for 2011 and

We first dismiss Defendant's contention that Plaintiffs confessed judgment in bad faith. It is clear that Defendant was certainly in default of terms of the Note by not timely supplying Plaintiffs with the financial documents for individuals, Carmichael, Iberti, and Bickley, and for Café NYC.  The record indicates that Plaintiffs repeatedly requested such documents and that they were finally supplied more than a year and a half after they were due.  Moreover, we agree with Plaintiffs in that they obviously would not continue to ask for documents that they had already received, albeit late, in December 2013.  However, that being said, Plaintiffs were in possession of the required documents at the time that they confessed judgment, and we will not deny Defendants' Petition to Open due to its untimeliness in producing these documents.

As noted, Plaintiffs also contend that Defendant violated other obligations under the Note.  Plaintiffs claim that Defendant failed to maintain complete and accurate books and records and, upon reasonable advance notice, permit them access.  Compl. ¶¶ 9-11.  Plaintiffs also claim that Defendant failed to allow Plaintiffs to "audit and conduct examinations of the books and records and accounts receivable of Borrower." (Id.)  Defendant argues that, to the contrary, it monthly provided Plaintiffs with sufficient and detailed financial information that allowed Plaintiffs to conduct an audit if they so desired. (Def.'s Mot. Open at 9.)   Bickley states in his Declaration that Defendant supplied Plaintiffs with "extremely detailed financial information" which included "data on cash flow, ending balances from last month, deposits in transit, checks outstanding, current loan payment, net cash flow, 8% cash flow to Hwangs, deposit credits, credit from credit cards, check debits and other debits and ending balance" on a monthly basis.  (Id.,

---

2012; and (2) an annual financial statement for Defendant for 2011 and 2012, including a compilation with full discloses, balance sheet, income sheet, and statement of cash flow.  (Id.)

Ex. A, Bickley Decl. ¶ 2.)  Defendant adds that this detailed financial information allowed Plaintiffs to audit the same which fulfilled its obligation under the Note.  (Def.'s Reply at 3.)

Plaintiffs reply that Defendant "simply made its own calculations as to what is owed under Section 4 [of the Note] and essentially asked" them to trust its numbers.  (Pls.' Resp. at 6.)  Plaintiffs further assert that when they asked for access to Defendant's books and records, Defendant has "repeatedly dodged the requests and instead provided cursory summaries in spreadsheets of its own making."  (Id.)  Plaintiffs state that these spreadsheets are not a substitute for access to Defendant's "books and records and accounts receivable" and contain no way for Plaintiffs to verify their calculations.  (Id.)

Defendant argues that the "difference on [the] parties' assertions on the financial information provided to Plaintiffs constitutes a significant factual dispute, requiring the opening of the Confessed Judgment."  (Def.'s Reply at 3.)  Defendants, thus, argue that they have a "meritorious defense," and it has "produced evidence which in a jury trial would require the issues to be submitted to the jury."  (Id.)

We, reluctantly, agree with Defendant.  On the surface it appears that Defendant may have violated terms of the Note by failing to "maintain complete and accurate books," failing to permit access to such records, and failing to allow Plaintiffs to "audit and conduct examinations" of Defendant's records.  Compl. ¶¶ 9-11.  However, Defendant has submitted a plethora of financial records to Plaintiffs and to this Court, which it claims satisfies its obligations under the Note, and allows Plaintiff to fully conduct an audit of its business. (See Def.'s Mot. Open, Exs. B-1, B-2, C, D-1, D-2, E, F-1, F-2, G, H, K-N.)  As stated earlier, a motion to open is to be granted "[i]f evidence is produced which in a jury trial would require the issues to be submitted

8

to the jury." Pa. R. Civ.P. 2959(e).  Moreover, we are to view all the evidence in the light most favorable to the petitioner and to accept as true all evidence and proper inferences from it which support the defense while rejecting adverse allegations of the party obtaining the judgment.  See Suburban Mechanical Contractors, Inc., 502 A.2d at 232.  Following these instructions, at this stage of the litigation, we are in no position to ascertain whether the substantial financial records produced to Plaintiffs by Defendant are sufficient for them to conduct a satisfactory audit.  Thus, viewing the evidence in a light most favorable to Defendant, we find that Defendant has produced evidence sufficient to go to a jury in a jury trial, and it has produced evidence sufficient to constitute a meritorious defense.  See FDIC, 207 F.3d at 161.  Accordingly, we grant Defendant's Petition to Open the Confessed Judgment.

       An appropriate Order follows.